## OLIVER H. P. BROWN & others *vs.* JOHN N. SMITH.

The master of a whaling vessel is liable to the owners for essentially violating any of the material orders and instructions under which he sailed.

If the master of a whaling vessel abandons the voyage, and wrongfully sells the property of the owners on board, the subsequent collection from him of a part of the proceeds of such sale, is no bar to an action against him for breaking up the voyage and disposing of the property, but reduces the damages.

In such an action, the expense of bringing home the vessel from a port to which the master has wrongfully navigated her, is a legal element of damages.

So are reasonable damages for breaking up the voyage; but conjectural or possible profits of a whaling voyage cannot be taken into consideration in estimating the damages.

THIS was an action upon the case for misconduct and disobedience of orders by the defendant, as master of the whaleship Garland, of New Bedford.

The declaration, after setting out the employment, &c. of the defendant by the plaintiffs, averred that they " ordered and instructed the said Smith to prosecute a whaling voyage, and no other, and not to go into the Pacific Ocean, before the first of February then next following, and not to any ports or places during said voyage, except for necessary refreshments and repairs; but the plaintiffs aver that the said Smith, wholly regardless of his duty in this behalf, and wholly disobeying the plaintiffs' orders and instructions, and contriving and intending to defraud and injure them, and destroy their said ship, cargo, and outfits, without the knowledge or consent, and against the will of the plaintiffs, employed the said ship, cargo, and outfits for another and wholly different voyage, to wit, for trading at various ports and places, and not for whaling; and navigated the ship, cargo, and outfits into the Pacific Ocean in January next following the time of her sailing, and sold the said outfits and cargo, and appropriated the same to his own use; and so changed and altered said ship as to convert her from a whaling ship into a ship for the transporting of passengers, and employed her for said last-mentioned purpose, for a long space of time, to wit, for the space of four months, and afterwards, to wit, on the thirtieth day of Jan-

uary last past, wrongfully and injuriously, and without the knowledge or consent of the plaintiffs, navigated the said ship to California, whereby the said ship was wrecked and wholly lost, together with her cargo and outfits, tackle and apparel."

At the trial in this court, November term, 1851, before *Metcalf*, J., the plaintiffs introduced evidence tending to prove that said ship was fitted for a whaling voyage of three years in the Atlantic and Pacific Oceans; that the defendant signed the shipping articles for such a voyage; that the ship sailed from New Bedford, June 19, 1849, with a crew of twenty-six men, and that her value then was about $10,000, and the value of her outfits from $10,000 to $15,000; that when the ship had been three weeks at sea, and often afterwards, the defendant said he was a fool to go a-whaling; that he should not have gone but for the solicitations of his wife, and that he ought to have gone to California; that after touching at the Azores, about July 10th, where the ship staid about the islands seven or eight days, she went to St. Michaels, where the defendant traded off some tobacco and other articles that were on board for that purpose; that the ship next went to the Abrothos Banks under full sail, and, on reaching them, made two tacks, remained twelve hours, but that no effort was made to take whales; that the ship then sailed for St. Catharines, and that the defendant, before reaching that port, said that if he did not make a whale voyage, he would shove the ship to California; that he would make a voyage somehow or other, and that it was his last voyage; that the ship then sailed for the River Plata, where they cruised three or four days, and took one twenty-barrel whale; that on the last day (the wind blowing very hard) a whale was in sight, but no effort was made to take it, the defendant saying he would take the ship round Cape Horn; that the defendant then put away for the Falkland Islands, shortened sail and hove to, to cruise for one night, and then set sail for Cape Horn; that the defendant at this time said his instructions were to cruise off the River Plata, but he would go where he pleased, and not cruise there to suit Rodney French (one of the owners) or anybody else. (According to the minutes of the judge, and of the defend-

ant's counsel, the testimony on this point was, that the defendant said his instructions were " to cruise off La Plata till October or November, before going into the Pacific Ocean." According to the minutes of the plaintiffs' counsel, the testimony was, that the defendant said his instructions were " to cruise off La Plata five or six months, and not go into the Pacific till October or November; " and the judge, in his charge to the jury, told them that it was for them to decide, on their recollection, what the testimony was as to the defendant's statement of his instructions.)

There was testimony tending to prove that the ship entered the Straits of Magellan, where she struck a rock and ran aground, but came off on the rising of the tide, and stopped at Sandy Point, Port Famer, and other places, and that the defendant sold articles to the value of about $1,500 ; that the ship then proceeded to San Carlos, where the defendant said he was going to draw his money for the articles sold, as aforesaid ; that, after entering the Pacific Ocean, no look-out was kept for whales, nor any attempt made to take any ; that the empty casks on board were shooked at San Carlos, and three passengers were taken on board ; also a cargo of lumber was taken on deck and between decks, and the ship sailed for Valparaiso, where the defendant sold said lumber, shooked casks, chains, anchors, one or two boats, &c., and purchased flour, and took a quantity of wine on freight ; that at San Carlos four or five of the crew deserted, but two of them voluntarily returned ; that the defendant requested his officers to get as many of the crew to desert as they could ; that twenty passengers were taken on board, and that the ship was fitted up for their accommodation ; that the ship arrived at San Francisco on the 1st of April, 1850 ; the crew remained on board three or four days, during which time the sails were unbent and stowed away, and the top-gallant masts and yards were sent down ; molasses, sugar, cordage, whalebone, running rigging, &c., were sold by the defendant; the crew were discharged by the defendant, and the ship was anchored on or near a mud-bank where she touched bottom at low water, but had a ship-

keeper on board; and that the defendant said he was going to take the ship up to Stockton, to make a public-house of her; that in April, 1850, the plaintiffs despatched Seth H. Ingalls to California, with a letter of attorney, who arrived there in June following, and found the ship in the place and condition above described, and took possession of her for the plaintiffs, shipped a new captain and crew, and sent her to New Bedford, where she arrived in January, 1851, the expense paid by the plaintiffs to those who navigated her home being about $2,800; that said Ingalls, after some search at San Francisco, found the defendant, and learning that he had in deposit with some persons about $4,500, instituted a trustee process against the defendant, to recover it for the plaintiffs. Ingalls testified that he found it very doubtful whether he could succeed in the suit, under the laws of California, and that he compromised with the defendant by taking $2,500; that he gave the defendant no receipt or discharge, either written or oral, but gave the paper, stated in the margin,[1] to the attorney, as necessary to be placed on the files of the court in California.

The defendant's counsel contended that the plaintiffs could not recover in this action, because it was not shown that the defendant had violated his instructions set forth in the declaration; but the jury were instructed, that the gravamen of the action was the abandonment by the defendant of the original voyage for another, and that the plaintiffs were entitled to recover in this action, if the defendant had violated any of the instructions set forth in the declaration, of which fact the jury were to judge upon the testimony in the case, though he had not violated all of them.

The defendant's counsel admitted that the settlement made

---

[1] "District Court, Fourth Judicial District, State of California. Rodney French & others *v.* John N. Smith. Attachment and Garnishment. June 1st, 1850. The indebtedness of the party sued in the above case having been settled for, on terms to which the parties in above case have acceded, it is understood between the parties that above case be marked 'Discontinued and settled,' on the minutes of the court. San Francisco. Seth H. Ingalls, Attorney for Plaintiffs; M. H. & H. McAllister, Attorneys for Defendant."

with Ingalls at San Francisco was not a bar to this action, if the defendant had violated the orders set forth in the declaration, and had broken up the original voyage; but that it was a bar to all claims of the plaintiffs on the defendant for outfits, the proceeds of outfits, or proceeds of other property of theirs sold by the defendant. The jury were instructed that, in assessing damages, if they should find the defendant guilty, the sum received of the defendant by Ingalls was to be deducted; and that, so far as the sum of $4,500, deposited by the defendant, consisted of the proceeds of sales of the plaintiffs' property, and no further, the said settlement was a bar to a recovery of further damages caused by such sales.

The plaintiffs' counsel claimed damages on three grounds: 1st, Damages to the vessel; 2d, Cost of bringing her home; 3d, Loss of voyage and profits.

The jury were instructed that the plaintiffs were not entitled to damages for injury to the ship, because there was no evidence that she was injured, or worn more than she would have been, if the original voyage had been successfully pursued; that the reasonable expense of bringing her home was a legal ground of damages; that the plaintiffs were also entitled to reasonable damages for the breaking up of the voyage, but that no conjectural or possible profits of a whaling voyage could be taken into consideration by the jury, in estimating such damages; and that if the jury should find that the defendant had broken up the voyage which he engaged to pursue, and had violated any of the instructions alleged in the declaration, the presumptions were against him, unless rebutted by evidence.

The jury returned a verdict for the plaintiffs for $8,000, and the defendant excepted to the foregoing instructions given to the jury.

*T. G. Coffin*, for the defendant.

*H. G. O. Colby*, for the plaintiffs.

BY THE COURT.[1] It appears to us that the instructions of

---

[1] This and the six following cases were argued and decided in Boston, in January, 1853: Present; SHAW, C. J and DEWEY, METCALF, BIGELOW, JJ

Brown & others *v.* Smith.

the judge to the jury in the present case were correct. The defendant was appointed by the plaintiffs master of their ship for a whaling voyage. If he essentially violated any of the material orders and instructions under which he sailed, and which, on accepting the appointment, he had bound himself to obey, the action will lie. The declaration expressly avers such a violation, by an abandonment of the voyage on which he sailed, and employing the vessel and crew in other voyages for his own benefit. It is not necessary to prove a violation of all the orders set out in the declaration ; therefore, whether he violated his orders by going into the Pacific a month too soon, or not, is immaterial. If violations material in their character are alleged, and the same are proved, it is sufficient to sustain the action.

Then as to the amount recovered of the defendant by the plaintiffs' agent, in California ; it is no bar to this suit. It was brought for the purpose of getting the proceeds of the plaintiffs' own property, illegally and wrongfully sold by the defendant, and then was settled by compromise, by the plaintiffs' agent, giving no release or discharge. No claim was made in that case, apparently, for the principal item of damage now sought to be recovered, viz : that caused by running away with the vessel and abandoning the voyage.

The judge directed that the amount thus recovered should be deducted from the damages they should find the plaintiffs had sustained. That we think was right, and this was the only use the defendant was entitled to make of the proceedings in California, by way of defence. On the subject of damages, we think the directions of the court were correct.

*Judgment on the verdict for the plaintiffs.*